**David R. Boyajian**, OSB #112582
Email: dboyajian@schwabe.com
**Kent Roberts**, OSB #801010
Email: ckroberts@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| PACIFIC GULF SHIPPING CO., | § | Case No.      3:_____ |
| | § | |
| Plaintiff, | § | |
| | § | VERIFIED COMPLAINT FOR |
| v. | § | ATTACHMENT OF VESSEL |
| | § | |
| ADAMASTOS SHIPPING & TRADING | § | IN ADMIRALTY |
| S.A., VIGOROUS SHIPPING & TRADING | § | |
| S.A., BLUE WALL SHIPPING LTD., and | § | |
| PHOENIX SHIPPING & TRADING S.A., | § | |
| | § | |
| Defendants. | § | |

Plaintiff, PACIFIC GULF SHIPPING CO. (hereinafter "PACIFIC GULF" or "Plaintiff"), by its undersigned counsel, as and for its Verified Complaint against Defendants ADAMASTOS SHIPPING & TRADING S.A. (hereinafter "ADAMASTOS SHIPPING"), VIGOROUS SHIPPING & TRADING S.A. (hereinafter "VIGOROUS SHIPPING"), BLUE WALL SHIPPING LTD. (hereinafter "BLUE WALL"), and PHOENIX SHIPPING & TRADING S.A. (hereinafter "PHOENIX SHIPPING") (collectively the "Defendants") avers and pleads as follows:

1

Verified Complaint

## JURISDICTION, VENUE AND PARTIES

1. Subject matter jurisdiction of this Honorable Court is based upon admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and is brought under the provision of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. This case is also an admiralty and maritime claim within the meaning of rule 9(h) of the Federal Rules of Civil Procedure for claim of breach of a maritime contract. The Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 204.

2. Venue is proper in this matter as the property sought to be attached is currently within the District of Oregon at the Temco Grain Terminal in Kalama, Washington in the Columbia River.

## THE PARTIES

3. At all times material hereto, Plaintiff PACIFIC GULF, was and still is a foreign company organized under the laws of The Marshall Islands.

4. At all times material hereto, Defendant ADAMASTOS SHIPPING was and still is a foreign company incorporated under the laws of Liberia and an address of "Care of PHOENIX SHIPPING, 47-49 Akti Miaouli, 5th Floor, Piraeus 185 36, Greece."

5. At all times material hereto, Defendant VIGOROUS SHIPPING was and still is a foreign company incorporated under the laws of Liberia and an address of "Care of PHOENIX SHIPPING, 47-49 Akti Miaouli, 5th Floor, Piraeus 185 36, Greece."

6. At all times material hereto, Defendant BLUE WALL, was and still is a foreign company registered to do business in The Marshall Islands and maintains an address of "Care of PHOENIX SHIPPING, 47-49 Akti Miaouli, 5th Floor, Piraeus 185 36, Greece."

7. At all times material hereto, Defendant PHOENIX SHIPPING was and still is a foreign company which maintains an address at 47-49 Akti Miaouli, 5th Floor, Piraeus 185 36, Greece.

## THE SUBSTANTIVE CLAIMS

8. On or about April 8, 2014, Plaintiff entered into a charter party agreement with Defendant ADAMASTOS SHIPPING for use of the M/V ADAMASTOS (hereinafter "the Vessel") for a period between ninety (90) days and one hundred and eighty (180) days. The charter agreement between Plaintiff and Defendant ADAMASTOS set forth specific terms, rights, and obligations between the parties. *See copy of the charter party agreement attached hereto as* **Exhibit 1**.

9. The April 8, 2014 charter party agreement is a maritime contract.

10. At all relevant times the M/V ADAMASTOS was claimed to be owned by Defendant BLUE WALL and was managed by Defendant PHOENIX SHIPPING.

11. At all relevant times notices and contact details for the Owners of the Vessel, Defendant ADAMASTOS was listed as "PHOENIX SHIPPING." *See* **Exhibit 1**.

12. Pursuant to the terms of the charter party, Plaintiff was to pay USD 9,000 per day including overtime payable ten (10) days in advance plus USD 130,000 gross ballast bonus to Defendant ADAMASTOS SHIPPING, payable every fifteen (15) days in advance in exchange for the use of a seaworthy vessel. *See* **Exhibit 1**.

13. The parties further agreed to the arbitration of disputes arising out of the maritime contract in London with English law to apply. *Id*.

14. Plaintiff duly complied with all obligations under the terms of the charter party agreement.

15. On or about July 14, 2014, Plaintiff as disponent owners of the Vessel entered into a sub-charter party agreement with Integris Co Ltd. for a one (1) time charter trip of one (1) laden leg *via* Brazil to Singapore-Japan range carrying lawful/harmless grain products in bulk.

16. Integris Co Ltd. sub-chartered the Vessel to Marubeni Corporation who was the owner of the soyabean cargo to be carried by the Vessel.

17. The Vessel arrived at Sao Francisco Do Sul, Rio Grande on or about July 31, 2014 and commenced loading of a cargo of soyabeans starting at 0120 hours LT on August 1, 2014.

18. On or about August 5, 2014, the Vessel was inspected by Port State control in Brazil. Brazilian authorities alleged there were no fewer than forty-two (42) deficiencies with the Vessel. The Port State Control authorities detained the vessel pending further investigation and rectification of the deficiencies.

19. At or about 1855 hours LT on August 6, 2014, the Vessel while still loading cargo, broke free of her moorings and drifted to the middle of the channel before eventually grounding.

20. The Vessel had loaded approximately 59,674.680 metric tons of soyabeans as of August 6, 2014, at or about the time that she broke free of her moorings.

21. The Vessel commenced refloating operations with her own engines and thereafter with the assistance of tugs and pilots, as well as by Salvors, Rebocadores do Brasil SA, and was refloated on August 7, 2014. Subsequently, the Vessel was shifted to the inner anchorage north of the terminal berth.

22. After the grounding, the terminal would not permit the Vessel to re-berth alongside to load any remaining cargo without meeting various conditions, including the posting of security. Owners ADAMASTOS SHIPPING failed, neglected, and/or refused to comply with the terminal requirements and the Port Captain ordered the Vessel to shift to the outer anchorage, given the

Vessel's draft and the Port State Control deficiencies and detention imposed on the Vessel.

23. Over the course of the next six (6) months, the Vessel remained under detention, failed to load the remainder of the cargo, and failed to complete the voyage as required under the various charter party obligations.

24. During this period, numerous claims and causes of actions were commenced against the Vessel by various third parties in Brazil, including (but not limited to) the following:

   a. $1,078,512 action by the Salvors for unpaid fees and costs;

   b. $160,000 action by Sagres Agenciamentos Maritimos Ltda. for unpaid agency fees;

   c. $8,250 action by Kronos Maritime Agent Limited for unpaid agency fees;

   d. An action by the Labour Prosecutor's Office which fined the Vessel $19,000 per day from the period of November 26, 2014 – December 30, 2014. As of December 31, 2014, the LPO action fine was increased to $150,000 per day for non-compliance through January 18, 2015, which was subsequently increased to $187,000 per day.

   e. On or about December 14, 2014, the Federal Government of Brazil commenced an action directing the Vessel and her owners to make the necessary repairs to the Vessel and deliver the cargo to its final destination.

   f. On or about January 3, 2015 the Master and crew of the Vessel commenced an action to recover their wages they had not been paid while working on the Vessel.

25. On February 12, 2015, the Vessel was formally found and/or declared to have been abandoned by her Owners and managers.

26. Marubeni Corporation sought to recover its loss of value of its soyabean cargo, estimated to be $32,650,000 against Integris Co Ltd. in London arbitration proceedings.

27. In turn, Integris Co Ltd. filed claims against Plaintiff in London arbitration proceedings and sought no less than $18,000,000 plus $559,219.68 for the damages and losses caused by the Vessel's failure to complete the voyage to Marubeni Corporation.

28. Integris Co Ltd. has sought an additional $737,451.82 in damages for overpaid hire, communication/entertainment/victualling fees, and fuel oil purchased.

29. On or about June 6, 2016, Plaintiff pursued its claim in London arbitration against ADAMASTOS SHIPPING for breach of the charter party agreement on the grounds that, *inter alia*:

   a. The Vessel was not suitable for loading, carriage, and discharge.

   b. The Vessel was not fit for service under the charter party or for any voyage and the Vessel was not seaworthy and/or properly manned, equipped, and supplied.

   c. The Vessel did not comport with the regulations and/or requirement for any port, port of call, or country.

   d. The Vessel did not have up-to-date certificates on board.

   e. ADAMASTOS SHIPPING breached their obligation under the charter party agreement "to make the ship seaworthy, properly manned, equipped, and supplied, and make the holds fit and safe for the reception, carriage and preservation of the cargo."

   f. ADAMASTOS SHIPPING breached the charter party agreement when ADAMASTOS SHIPPING: (1) failed to take steps to remedy the deficiencies; (2) failed to complete loading onboard the Vessel; (3) failed to commence its voyage to China; (4) failed to deliver the cargo to China; (5) abandoned the Vessel, the contracted voyage, the cargo, and carriage of cargo; and (6) failed to deliver the

cargo to the discharge port.

30. As a result of ADAMASTOS SHIPPING's breach of the charter party agreement and abandonment of the fully laden Vessel, Plaintiff PACIFIC GULF has suffered estimated principal damages in the amount of no less than $19,296,671.50, plus applicable interest, costs, and fees.

31. On April 19, 2017, the Sole Arbitrator issued a final award against ADAMASTOS SHIPPING and declared that Plaintiff was entitled to be indemnified by ADAMASTOS SHIPPING for *any and all* liabilities that Plaintiff "have or might be found to have or might in the near future" related to the claims up the charter chain by Marubeni Corporation and Integris Co Ltd., plus applicable costs, fees, and interest.  *A copy of the First Final Award is attached hereto as **Exhibit 2***.

## COUNT I – RECOGNITION AND ENFORCEMENT OF THE ARBITRATION AWARD UNDER THE NEW YORK CONVENTION

32. PACIFIC GULF restates and re-alleges paragraphs 1 – 31 in the above foregoing Verified Complaint as if set forth herein.

33. Plaintiff hereby petitions this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et. seq*. (the "New York Convention"), for an order confirming the Award in favor of Plaintiff and against Defendants, joint and severally.

34. The United States, Liberia, The Marshall Islands, and the United Kingdom (*i.e.* the country in which the Award was rendered), are signatories of the New York Convention.

35. Jurisdiction is proper in this Court pursuant to 9 U.S.C. § 203.

36. Venue is proper in this Court pursuant to 9 U.S.C. § 204.

37. The April 19, 2017 arbitration award is final and no appeal has (or can be) taken by ADAMASTOS SHIPPING. Plaintiff respectfully submits that no grounds exist for refusal or deferral of recognition or enforcement of the Award against the Defendants under the Convention.

38. For the foregoing reasons, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants recognizing and enforcing the Award in the amount of $19,296,671.50, plus applicable interest, costs, and fees as per the Award.

39. Plaintiff hereby reserves the right to further petition this Court to confirm any further award of interest or costs which may be rendered in respect of this matter.

## COUNT II ALTER-EGO LIABILITY

40. PACIFIC GULF restates and re-alleges paragraphs 1 – 39 in the above foregoing Verified Complaint as if set forth herein.

41. The alter ego doctrine applies when either (1) the owner exercised complete control over the corporation with respect to the transaction at issue, or (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil.[1]

   a. Factual Allegations of Domination and Control

42. Defendant BLUE WALL exercises complete control over Defendants ADAMASTOS SHIPPING, VIGOROUS SHIPPING, and PHOENIX SHIPPING.

43. ADAMASTOS SHIPPING is merely a captive corporation through which its parent, BLUE WALL entered the charter party agreement as alter ego. Defendants BLUE WALL and PHOENIX SHIPPING abandoned the M/V ADAMASTOS in Brazil in breach of the charter party agreement, for their own benefit and to the detriment of Plaintiff PACIFIC GULF.

---

[1] *OS Shipping Co. v. Global Mar. Trust(s) Private Ltd.*, No. 11-CV-377-BR, 2011 U.S. Dist. LEXIS 49054, at *15, (D. Or. 2011) (citing *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997)).

44. Brothers George and Stathis Gourdomichalis, by and through their companies BLUE WALL and PHOENIX SHIPPING exert dominion and control over the vessels in BLUE WALL's fleet, including the M/V ADAMASTOS and the M/V VIGOROUS through their single-purpose entities ADAMASTOS SHIPPING and VIGOROUS SHIPPING, such that all Defendants are in fact one (1) single business entity.

45. The M/V ADAMASTOS had a 2012 first preferred mortgage and the sole signatory to the agreement on behalf of ADAMASTOS SHIPPING was George Gourdomichalis. *See Adamastos Mortgage attached hereto as **Exhibit 3***.

46. BLUE WALL was established by George and Stathis Gourdomichalis for the purpose of owning and operating a fleet of Vessels. *See Blue Wall's strategy attached hereto as **Exhibit 4***.

47. BLUE WALL's corporate officers include: George D. Gourdomichalis as the Chief Executive Officer; Stathis D. Gourdomichalis as the Chief Operating Officer; and Alexandros (a.k.a. "Alex") Hiadas as the Chief Financial Officer. *See **Exhibit 4***.

48. PHOENIX SHIPPING was established by George D. Gourdomichalis to serve as the 'manager/operator' of BLUE WALL's fleet of vessels. George D. Gourdomichalis is also the PHOENIX SHIPPING's Chief Executive Officer.

49. BLUE WALL holds itself out as a Vessel owner and states that: "It operates **wholly owned**, top quality dry bulk vessels. BLUE WALL has built a strong balance sheet, **owns cash flow generating vessels** and is well positioned for growth through the cycle." *A copy of Blue Wall's home web page is attached hereto as **Exhibit 5***.

50. BLUE WALL confirms that it owns and operates a fleet of eight (8) vessels listed on its company website: M/V BRAZEN; M/V COURAGEOUS; M/V DAUNTLESS; M/V

FEARLESS; M/V AUDACIOUS; M/V DEFIANT; M/V INTREPID; and the M/V VIGOROUS. *A copy of Blue Wall's fleet is attached hereto as **Exhibit 6**.*

51. Brothers George and Stathis Gourdomichalis acquired the vessels by raising equity to purchase the vessels and spent over $45 million dollars on the M/V BRAZEN; M/V COURAGEOUS; M/V DAUNTLESS; and the M/V FEARLESS. *A copy of the press release confirming same is attached hereto as **Exhibit 7**.*

52. BLUE WALL's address for public inquiries is "c/o Phoenix Shipping and Trading, 47-49 Akti Miaouli, 5th Floor, Piraeus, 18536." *A copy of Blue Wall's contact information is attached hereto as **Exhibit 8**.*

53. According to Equasis, an online database that provides information for marine transportation, BLUE WALL's fleet of eight (8) vessels is separately owned by different entities. The respective registered owners of the eight (8) vessels include: Brazen Shipping & Trading S.A. as registered owner of the M/V BRAZEN; Courageous Shipping & Trading S.A. as registered owner of the M/V COURAGEOUS; Dauntless Shipping & Trading S.A. as registered owner of the M/V DAUNTLESS; Fearless Shipping & Trading S.A. as registered owner of the M/V FEARLESS; Audacious Shipping & Trading S.A. as registered owner of the M/V AUDACIOUS; Defiant Shipping & Trading S.A. as registered owner of the M/V DEFIANT; Intrepid Shipping & Trading S.A. as registered owner of the M/V INTREPID; and Vigorous Shipping & Trading S.A. as registered owner of the M/V VIGOROUS. *A copy of the Equasis search is attached hereto as **Exhibit 9**.*

54. VIGOROUS SHIPPING, along with the remaining alleged registered owners listed on Equasis, provides its mailing address for the registered owner as "c/o Phoenix Shipping and Trading, 47-49 Akti Miaouli, 5th Floor, Piraeus, 18536." *Id.*

55. Even though VIGOUROUS is 'registered' to VIGOUROUS SHIPPING, in actuality, it is beneficially owned and operated by BLUE WALL and PHOENIX SHIPPING, by and through the control of Messrs. George and Stathis Gourdomichalis.

56. Although each vessel in the fleet of BLUE WALL was registered in the name of an individual one-ship company, BLUE WALL beneficially owned and operated these vessels as assets of a single business enterprise; and the purported corporate independence of the respective vessel owners was simply fictitious, as they were entirely subjugated to BLUE WALL's business goals and practices.

57. VIGOROUS SHIPPING, ADAMASTOS SHIPPING, BLUE WALL, and PHOENIX SHIPPING are part of a single business enterprise disguised as separate business entities.

58. The finances and business activities of Defendant BLUE WALL and the vessel-owning entities including Defendants ADAMASTOS SHIPPING and VIGOROUS SHIPPING are so intertwined, and there exists such a unity of ownership and interest between them that no separation exists.

59. The Office of the Deputy Commissioner of Maritime Affairs for the Republic of Liberia maintains copies of the first preferred mortgage for the M/V VIGOROUS, which connects the Defendants and the other vessel-owning entities and establishes Messrs. George and Stathis Gourdomichalis as the beneficial owners of the M/V VIGOROUS. *A copy of the Vigorous Mortgage is attached hereto as **Exhibit 10**.*

60. On December 30, 2014, VIGOROUS SHIPPING and mortgagee CIT Finance LLC entered into a first preferred mortgage agreement. *See **Exhibit 10**.*

61. Under the loan agreement, VIGOROUS SHIPPING pledged its only asset, the M/V VIGOROUS, as collateral to secure a $24,150,000 loan for two (2) other entities, Brazen Shipping & Trading S.A. (hereinafter "BRAZEN") and Dashing Shipping & Trading S.A. (hereinafter "DASHING"), both of which are owned, operated, and controlled by BLUE WALL. *Id.*; *see also* ***Exhibit 6***; ***Exhibit 7***; and ***Exhibit 9***.

62. VIGOROUS SHIPPING, as collateral guarantor, agreed to guarantee all liabilities of BRAZEN and DASHING in the financial documents. *See* ***Exhibit 10***. Such guarantee was given without compensation or an arms-length contract because VIGOROUS SHIPPING, just like all other single purpose entities in the BLUE WALL fleet, is dominated and controlled by BLUE WALL.

63. BLUE WALL, as parent guarantor, guaranteed all liabilities of BRAZEN and DASHING in the financial documents. *Id*.

64. Pursuant to Schedule 1, Part A, of the mortgage agreement, VIGOROUS SHIPPING, BLUE WALL, and borrowers BRAZEN and DASHING reflect that the address for all communications is in "c/o Phoenix Shipping and Trading, 47-49 Akti Miaouli, 5th Floor, Piraeus, 18536." *Id*.

65. BLUE WALL, at the direction of Messrs. George and Stathis Gourdomichalis regularly cross-guarantees and collateralizes each of the single purpose entities that it owns and controls not for the benefit of the individual vessel owning company, but for the benefit of BLUE WALL.

66. Defendant BLUE WALL regularly holds itself out to the maritime industry and press as being the owning company which acquires, operates, and owns all vessels within the commonly managed and operated fleet. *See* ***Exhibit 5*** and ***Exhibit 7***.

67. Defendants BLUE WALL and PHOENIX SHIPPING, by and through Messrs. George and Stathis Gourdomichalis, have attempted to intentionally disclaim liabilities for all damages caused by its abandonment of the M/V ADAMASTOS.

68. All Defendants are at all relevant times operated, controlled, and managed by BLUE WALL, which results in an intermingled web of companies doing business as one (1) single economic enterprise that disregards all corporate formalities.

69. Though Defendants comprise nominally separate corporate business / legal entities, their ownership and control is so intertwined and fused that they are only distinct from one another as a matter of formality.

70. This blatant disregard for separate and distinct corporations and dominion by common officers, managers, and directors demonstrates that the Defendants are mere alter egos of each other and subject to the dominion and control of BLUE WALL, by and through *inter alia*, Messrs. George and Stathis Gourdomichalis.

b. <u>Fraud in the Underlying Transaction</u>

71. Defendants BLUE WALL and PHOENIX SHIPPING used their control over Defendant ADAMASTOS SHIPPING to enter into a charter party agreement with Plaintiff PACIFIC GULF, despite knowing that the Vessel was unseaworthy, not fit for its intended purpose, and not in compliance with all international regulations. *See **Exhibit 2***.

72. Defendants BLUE WALL, PHOENIX SHIPPING, and ADAMASTOS used these false representations to their own advantage in order obtain Plaintiff's business. Plaintiff would not have contracted for the use of the M/V ADAMASTOS absent these material misrepresentations by the Defendants that the Vessel was, among other warranties and guarantees contained in the charter party agreement, a seaworthy vessel that was fit for its intended purpose

and in compliance with all international regulations, laws, and requirements.

73. Defendants BLUE WALL and PHOENIX SHIPPING for their own benefit and the fraudulent benefit of the remaining vessels within the fleet, including the M/V VIGOROUS, purposefully failed, neglected, and/or refused to satisfy the claims against the M/V ADAMASTOS in Brazil and instead abandoned the vessel, leaving Plaintiff PACIFIC GULF to deal with the claims from cargo owners and sub-charterers which are no less than $19,296,671.50, plus applicable interest, costs, and fees.

74. Defendant BLUE WALL now intends to operate its remaining vessels, including the M/V VIGOROUS with impunity, as it attempts to hide behind the sham company VIGOROUS SHIPPING, without providing Plaintiff payment or security for the damages caused by BLUE WALL through its domination, control and use of the M/V ADAMASTOS to commit a wrong which has caused Plaintiff significant injuries and damages.

    c.    <u>The South African Proceedings</u>

75. On or about August 6, 2015, Plaintiff arrested the M/V VIGOROUS in Richards Bay, South Africa on the allegation that the vessel was an associated ship of the M/V ADAMASTOS as defined under South African law.

76. In that action, the only named parties were the M/V VIGOROUS and VIGOROUS SHIPPING & TRADING S.A. Named Defendants in this action, BLUE WALL, PHOENIX SHIPPING, and ADAMASTOS SHIPPING, were not defendants in the South African proceedings.

77. The application in support of the associated ship arrest was premised almost exclusively on the allegation that George Gourdomichalis and Stathis Gourdomichalis were the beneficial owners of both the M/V VIGOROUS and the M/V ADAMASTOS.

78. The order of arrest was issued by Madam Justice Mbatha on August 6, 2015. *A copy of the Order is attached hereto as **Exhibit 11***.

79. Defendant VIGOUROUS SHIPPING challenged the arrest in an *ex parte* proceeding before a different Judge, the Honorable Justice Vahed, and the order of arrest was vacated on August 11, 2015 without Plaintiff being given the opportunity to challenge the documentation submitted to the Court by VIGOUROUS SHIPPING or having the opportunity to appeal the decision before the Vessel sailed.

80. Justice Vahed issued his Reasons for Judgment several months after the release of the vessel. *A copy of the Reasons for Judgment are attached hereto as **Exhibit 12***.

81. The decision stated that Plaintiff's alleged link between the M/V ADAMASTOS and M/V VIGOROUS did not include sufficient factual allegations because respondents had submitted *ex parte* evidence to demonstrate that there were other external investors in BLUE WALL who 'might or might not have an influence with regard to the direction and fate of the vessels in their fleet.' *Id*.

82. The Order from the South African proceedings applied a different legal standard, did not include three (3) parties who are named here, and was decided on preliminary, *ex parte* submissions without the benefit of disclosures, discovery, depositions, and/or a trial on the merits.

83. VIGOUROUS SHIPPING asserted that there were other alleged investors in BLUE WALL aside from the Gourdomichalis brothers in order to refute Plaintiff's founding affidavit in support of the South African arrest on the allegation of the same beneficial ownership.

84. Justice Vahed's decision is not determinative of the issues pending before this Court as Plaintiff has submitted numerous specific factual allegations in support of a finding of

15

Verified Complaint

alter-ego liability against the Defendants, which are supported by exhibits, including Defendants own mortgage and loan documents. *See* paragraphs 41 – 74, *supra*.

85. At this preliminary stage, Plaintiff is not required to definitively establish that Defendants are alter-egos, but need only show *prima facie*, reasonable grounds to believe so.[2]

86. Plaintiff seeks prompt discovery in this matter, including requests for production, interrogatories, and depositions to obtain information and documentation which is solely in the possession of Defendants.

## APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

87. PACIFIC GULF restates and re-alleges paragraphs 1 – 86 in the above foregoing Verified Complaint.

88. Plaintiff's claim against Defendants for breach of the charter party agreement is a maritime claim. This is an ancillary proceeding to secure jurisdiction and security over Defendants.

89. Defendants are not present and cannot be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. *See Affidavit of Attorney David R. Boyajin attached hereto as* **Exhibit 13**. Notwithstanding, the Defendants have within the District tangible personal property comprised of the M/V VIGOROUS, IMO No. 9298521, which is subject to attachment as security for PACIFIC GULF's claims.

90. Interest, costs, and attorney's fees are routinely awarded to the prevailing party under English Law and the procedural rules of London arbitration. It is standard for interest to be

---

[2] *OS Shipping Co. v. Global Mar. Trust(s) Private Ltd.*, No. 11-CV-377-BR, 2011 U.S. Dist. LEXIS 49054, at *13 (D. Or. 2011).

awarded to the prevailing party in the amount of 5.0%, compounded quarterly. *See **Exhibit 2**, pgs. 21-23*.

91.     PACIFIC GULF expects to recover the following amounts in arbitration from Defendants:

|   |   |   |
|---|---|---|
| A. | Principal Claim | $19,296,671.50 |
| B. | Estimated Interest for Principal Claim: 4 *years at 5.0 %, compounded quarterly* | $3,006,109.48 |
| C. | Arbitration Cost: | $7,100.00 |
| D. | Estimated Attorney's Fees: | $300,000.00 |
|   | TOTAL: | $22,609,880.98 |

92.     Therefore, PACIFIC GULF's total claim for breach of the charter party, plus applicable interest, costs, and fees in the aggregate estimated to be no less than $22,609,880.98.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

A.     That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants be cited to appear and answer the allegations of this Verified Complaint;

B.     That if Defendants cannot be found within this district, then all of their respective tangible or intangible property within this district, including M/V VIGOROUS, her engines, boilers, tackle, apparel, and all necessary appurtenances thereto, as well as debts, credits, or effects including but not limited to accounts, checks, disbursement advances, payments, property on board the M/V VIGOROUS, owned by the said Defendants or in the hands or control of persons named as garnishees in the Process of Maritime Attachment and Garnishment be attached and seized pursuant to Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

C.     That a judgment be entered against the Defendants in the sum of $22,609,880.98,

and the proceeds of the assets attached be applied in satisfaction thereof;

      D.     That the Court grant Plaintiff such other and further relief as it deems just, equitable and proper.

DATED:     DECEMBER 3, 2018

                      RESPECTFULLY SUBMITTED,

                      SCHWABE, WILLIAMSON & WYATT, P.C.

By:    *s/David R. Boyajian*
David R. Boyajian, OSB #112582
dboyajian@schwabe.com
Kent Roberts, OSB #801010
ckroberts@schwabe.com
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Facsimile: 503.796.2900
*Of Attorneys for Plaintiff, Pacific Gulf Shipping Co.*

*Of Counsel*
CHALOS & CO, P.C.
Briton P. Sparkman
*Pro Hac Vice Application Forthcoming*
*Attorney for Plaintiff*
7210 Tickner Street
Houston, Texas 77055
Telephone: (516) 714-4300
Email: bsparkman@chaloslaw.com