**M. Christie Helmer**, OSB No. 743400
chris.helmer@millernash.com
**Jess G. Webster**, OSB No. 155330
jess.webster@millernash.com
**Sanja Muranovic**, OSB No. 171774
sanja.muranovic@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

**Keith B. Letourneau** (*Pro Hac Vice* pending)
kletourneau@blankrome.com
**Jeremy A. Herschaft** (*Pro Hac Vice* pending)
jherschaft@blankrome.com
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, Texas  77002
Telephone:  713.228.6601
Facsimile:  713.228.6605

Attorneys for Defendant Vigorous Shipping & Trading, S.A.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| PACIFIC GULF SHIPPING CO., | No. 3:18-cv-02076-MO |
| Plaintiff, | DEFENDANT VIGOROUS SHIPPING & TRADING'S MOTION TO VACATE MARITIME RULE B ATTACHMENT |
| v. | |
| ADAMASTOS SHIPPING & TRADING S.A., VIGOROUS SHIPPING & TRADING, S.A., BLUE WALL SHIPPING LTD., and PHOENIX SHIPPING & TRADING S.A., | **(ORAL ARGUMENT REQUESTED)** |
| Defendants. | **(REQUEST FOR EMERGENCY RELIEF)** |

## LR 7-1 CERTIFICATE

Counsel for Vigorous Shipping & Trading S.A. conferred in good faith with counsel for plaintiff about the dispute, but the parties have been unable to resolve the dispute.

## LOCAL RULE 7-2 CERTIFICATION

This motion complies with the applicable page limitation under LR 7-2(b) because it does not exceed 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## MOTION

Pursuant to Rule E(4)(f) of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Admiralty Rules"), and subject to its restricted appearance under Supplemental Admiralty Rule E(8) as owner of the *M/V VIGOROUS* ("VIGOROUS" or "Vessel"), Vigorous Shipping & Trading S.A. ("Vigorous Shipping") respectfully requests this Court vacate the attachment of its Vessel obtained by Plaintiff Pacific Gulf Shipping Co. ("Pacific"), pursuant to the *ex parte* order of attachment issued on December 3, 2018 (ECF No. 6).  Vigorous Shipping respectfully submits that the attachment should be vacated because:

- Pacific has not asserted a direct claim against Vigorous Shipping and instead is alleging that Vigorous Shipping is the alter ego of one or more of the other defendants named in its Complaint, and thus its property, the Vessel, should be subject to Rule B attachment to satisfy an arbitration award Pacific obtained against defendant Adamastos Shipping (and only Adamastos Shipping);

- Pacific did not and cannot meet its *prima facie* burden under Rule B to establish that Blue Wall or Phoenix are the alter egos of Adamastos Shipping, that anyone other than Vigorous Shipping owns the Vessel and/or that Vigorous Shipping is

an alter ego of any of the other defendants named in the Complaint[1]; and,

- A South African court previously ruled against Plaintiff in a nearly identical arrest action against the Vessel which was premised on the same control over the ships ADAMASTOS and VIGOROUS by Blue Wall that Plaintiff is asserting herein, and the doctrine of *res judicata* therefore bars the present action.

## BACKGROUND/PROCEDURAL HISTORY

From 2015 until April 2017, Pacific pursued a foreign arbitration proceeding against Defendant Adamastos Shipping & Trading S.A. ("Adamastos Shipping") claiming that Adamastos Shipping breached a charter party it had with Pacific for the M/V ADAMASTOS. On April 19, 2017, an award was issued in Pacific's favor against Adamastos Shipping (the "2017 arbitration award"), which Pacific asserts remains unpaid.

On December 3, 2018, Pacific filed its Original Complaint herein alleging that a total of four companies are liable to it to satisfy the 2017 arbitration award: Adamastos Shipping, Blue Wall Shipping Limited ("Blue Wall"), Phoenix Shipping & Trading S.A. ("Phoenix"), and Vigorous Shipping.  While it is not entirely clear which allegations are being made against which defendants, Pacific's Complaint appears to contain no allegations that Vigorous Shipping, the undisputed registered owner of the Vessel Plaintiff has seized, is liable to Pacific in its own individual capacity.  Pacific's sole purpose for including Vigorous Shipping in this case is to allege that Vigorous Shipping is an alter ego of one or more of the other named defendants (Blue Wall and Phoenix) and, that these other defendants are alter egos of Adamastos Shipping, and therefore, Vigorous Shipping's property, i.e., the Vessel, is subject to attachment under

---

[1] Enclosed as Exhibit 2 is a chart demonstrating the relationship among all parties for illustrative purposes and the Court's benefit.

Supplemental Admiralty Rule B.  Thus, Plaintiff bears the burden of piercing not one, but two corporate veils to reach Vigorous Shipping.

This is the second time Pacific has seized the Vessel and sued Vigorous Shipping, and the allegations have been essentially the same both times.  Specifically, in August 2015, Pacific obtained a court order and seized the Vessel in South Africa as security for its then-pending arbitration against Adamastos Shipping.  The order was subsequently vacated.[2]  In doing so, South African court stated, "[o]n the papers before me it seems that the attempts to establish a link between the mv Adamastos and the mv Vigorous via Blue Wall Shipping boils down to being mere suggestion and conjecture."[3]

The same is true in this case.  Under Rule B, Pacific must establish that it has a valid *prima facie* admiralty claim against the Vessel's owner. Pacific's Complaint does not include a single allegation that Vigorous Shipping itself was involved in the charter party at issue in the 2017 arbitration award, or that Vigorous Shipping engaged in any fraudulent conduct of its own (and in fact, Vigorous Shipping was not even in existence when the charter party for the ADAMASTOS was entered into).  Instead, Pacific's allegations as to why it is entitled to seize the Vessel essentially boil down to the following:

1.    Blue Wall and/or Phoenix are alter egos of Adamastos Shipping, and Pacific therefore has a valid maritime claim against them to recover the 2017 arbitration award;

2.    Blue Wall and/or Phoenix are alter egos of Vigorous Shipping and are thus the owners of the Vessel; and/or

---

[2] That order is no longer appealable and is a final judgment.  *See* Declaration of Patrick Holloway, filed herewith.

[3] A copy of the order is included with the Declaration of Patrick Holloway.  The quoted language is at paragraph 21 of the order.

      3.      Vigorous Shipping is an alter ego of Adamastos Shipping and thus Pacific has a valid maritime claim against it to recover the 2017 arbitration award.

However, Pacific's Complaint, which is scant on facts and a classic example of conclusory pleading, fails to establish *prima facie* support for any of these allegations.  Attached hereto as Exhibit 1 is a copy of the Plaintiff's Verified Complaint with the plainly conclusory and unsupported allegations stricken.  Stripped of the conclusory allegations, the remaining *facts* alleged in support of Plaintiff's alter ego claim are few, and none suggest anything other than a business organization that was structured, managed, and financed in manner typical of all shipping companies.  Specifically, Pacific's evidence consists of the ADMASTOS charter agreement, the arbitration award in favor of Pacific against Adamastos Shipping, extracts from Blue Wall's website, two preferred ship mortgages, and two South African court orders, the second of which vacated the arrest of the vessel VIGOROUS in 2015.  That's it.  Nothing about those documents support the conclusion that Blue Wall or Phoenix were the alter ego of Adamastos Shipping, that Blue Wall or Phoenix were the alter ego of Vigorous Shipping, or that Vigorous Shipping was the alter ego of Adamastos Shipping.

In contrast, the evidence Vigorous Shipping submits with this motion conclusively defeats both sets of allegations.  For example, regarding the alleged alter ego connections between Blue Wall, Phoenix, and Adamastos Shipping, the evidence establishes the following:

      1.      Blue Wall never owned or operated the vessel ADAMASTOS.  Blue Wall does not now and never had any direct or indirect ownership interest whatsoever in the

vessel ADAMASTOS or Adamastos Shipping. Blue Wall has never served as the parent or affiliated company to Adamastos Shipping.[4]

2.  None of Blue Wall's shareholders have any connection with Adamastos Shipping or the vessel ADAMASTOS, which has been scrapped.  Adamastos Shipping has no corporate relationship to Blue Wall.  Adamastos Shipping was never part of Blue Wall's corporate structure.[5]

3.  Phoenix and Adamastos Shipping had a ship-management agreement that called for Phoenix to serve as the ADAMASTOS's ISM and technical manager. Phoenix never owned the vessel ADAMASTOS (and has not ever owned any ship).  Phoenix had no other connection to Adamastos Shipping.[6]

4.  Blue Wall and Phoenix maintain adequate corporate minutes and records.[7]

5.  There is no intermingling of individual and Blue Wall or Phoenix company records.[8]

6.  Blue Wall or Phoenix are managed by appointed officers and directors, and not by the shareholding owners of the company.[9]

7.  Blue Wall and Phoenix are adequately capitalized.  The companies are current on their contractual obligations.[10]

8.  Blue Wall and Phoenix maintain all corporate formalities, including articles of incorporation, by-laws, and minutes of directors' meetings.[11]

9.  Blue Wall and Phoenix maintain separate books, segregate their funds, and do not commingle their assets with each other or any other entity.[12]

---

[4] *See*, Declaration of George Gourdomichalis, at ¶¶ 4, 9, filed herewith (hereinafter "Dec. G. Gourdomichalis").

[5] Id. at ¶¶ 11, 12.

[6] Id. at ¶¶ 5, 10.

[7] Id. at ¶¶ 14, 18.

[8] Id. at ¶¶ 10. 11, 16. 19.

[9] Id. at ¶¶ 2, 11, 20.

[10] *Id*. at ¶ 21.

[11] *Id*. at ¶ 22.

[12] *Id*. at ¶¶ 14, 15, 22.

Page 6 -    Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B Attachment

Further, the evidence establishes the following regarding Vigorous Shipping:

1.  Vigorous Shipping is the owner of the Vessel.[13]

2.  Vigorous Shipping is wholly owned by Blue Wall.[14]

3.  Vigorous Shipping has entered into a BIMCO Shipman (ship management) agreement with Phoenix to technically and commercially manage the Vessel.  That is the sole relationship between the two companies.[15]

4.  Vigorous Shipping is not inadequately capitalized, and in fact owns a significant asset, i.e., the Vessel.[16]

5.  The directors of Vigorous Shipping observe all the formal legal requirements necessary for separate corporate existence.[17]

6.  There is no commingling of funds between Vigorous Shipping and any other company, including Blue Wall.[18]

7.  There is absolutely no connection and there never was between Vigorous Shipping and Adamastos Shipping.[19]

8.  Vigorous Shipping did not even exist at the time that the charter agreement for the vessel ADAMASTOS was signed.[20]

---

[13] *Id*. at ¶ 7, *See also*, Declaration of Stratis Gourdomichalis, at ¶ 2, 3, 4, filed herewith (hereinafter "Dec. S. Gourdomichalis"); *See also*, Permanent Certificate of Registry for the M/V VIGOROUS, and Certificate of Ownership and Encumbrance dated December 7, 2018, issued by the Liberia Maritime Authority, The Republic of Liberia, copies of which are attached as Exhibits C & D to the Declaration of Sanja Muranovic, filed herewith (hereinafter "Dec. S. Muranovic").

[14] Dec. G. Gourdomichalis, at ¶ 8; Dec. S. Gourdomichalis, at ¶ 6; *and see* Certificate of Shareholding, Exhibit B to Dec. S. Muranovic.

[15] Dec. S. Gourdomichalis, at ¶ 7.

[16] *Id*., at ¶ 8.

[17] Id., at ¶ 10.

[18] *Id*., at ¶ 11.

[19] *Id*. at ¶ 12.

[20] *Id*. at ¶ 13; *and see* Certificate of Incorporation of Vigorous Shipping, Exhibit A to Dec. S. Muranovic.

Plaintiff's Original Complaint was filed on December 3, 2018.  The *ex parte* order of attachment was entered the same day and served on the Vessel shortly afterwards.  The Vessel remains detained at its berth.  Vigorous Shipping files the present motion to seek the Court's intervention to vacate the attachment and release the Vessel from detention so that it can resume its commercial sailing schedule/obligations, which have been and continue to be delayed by Pacific's action in this matter at considerable cost to Vigorous Shipping..

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **ARGUMENT**

   A.   **Vigorous Shipping Requests An Emergency Hearing on This Application.**

   To ensure the constitutionality of the attachment mechanism provided by Rule B, Supplemental Admiralty Rule E(4)(f) provides any person whose property has been attached pursuant to Rule B an opportunity to appear before a district court to contest the attachment:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Fed. R. Civ. P. Supp. R. E(4)(f).  This rule speaks in mandatory terms and is necessary to give a claimant its day in court after a plaintiff such as Pacific has been able to obtain *ex parte* relief, outside of the adversarial system with minimal oversight.  The Advisory Committee to the Federal Rules has stated that at the Rule E(4)(f) hearing the interested party can attack "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp. Rule E(4)(f), Advisory Committee's note.  Indeed, as was noted in *G.O. Am. Shipping Co., Inc. v. China COSCO Shipping Corp. Ltd.*, C17-912 MJP, 2017 WL 6026959,

at *6 (W.D. Wash. Dec. 5, 2017) (not reported); *see also SLS Shipbuilding Co. Ltd, v. Ionia Management, SA*, 2011 WL 2652365, *3 (SDTX July 5, 2011), if property is attached and garnished under **Rule B**, the property owner is "entitled to a prompt hearing at which the plaintiff [is] required to show why the arrest or attachment should not be vacated . . . ." Supplemental Admiralty Rule E(4)(f).

It is paramount that this matter be heard as soon as possible.  If the Vessel is not promptly released, it will cause Vigorous Shipping irreparable harm.  As of December 12, 2018, the arrest and detention of the Vessel will have caused Vigorous Shipping to suffer an estimated $169,669 in expense and lost profit, with each additional day of detention costing Vigorous Shipping an estimated $16,873.[21]  Accordingly, an immediate hearing is necessary to prevent further harm to Vigorous Shipping.

> **B.    Pacific has Failed to Carry Its Burden to Show Why the Attachment Should be Maintained, and As a Result This Court Must Vacate the Attachment.**
>
> 1.    Requirements for a Rule B Attachment of Property.

Rules B and E of the Supplemental Admiralty Rules authorize a court to issue an order of maritime attachment if the plaintiff satisfies the rules' filing and service requirements and can show that (1) plaintiff has a valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property can be found within the district; and (4) there is no statutory or maritime bar to the attachment.  *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010) (citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd*, 460 F.3d 434, 445 (2d Cir. 2006).  To that end, "Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was

---

[21] Dec. S. Gourdomichalis, at ¶¶ 15 & 16.

properly ordered and complied with the requirements of Rules B and E." *Aqua Stoli*, 460 F.3d at 445, n.5.  Accordingly, the burden is squarely on Pacific to show that the attachment made under the Court's order was proper.

A motion to vacate a Rule B attachment is decided based upon whether a *prima facie* claim is shown and the technical requirements for attachment have been met. *Equatorial Marine*, 591 F3d at 1210; *Indagro S.A. v. Bauche S.A*, 652 F. Supp. 2d 482, 485 (S.D.N.Y. 2009), citing *Chiquita Int'l Ltd. v. MV Bosse*, 518 F. Supp 2d 589, 597 (S.D.N.Y. 2007), citing *Aqua Stoli*, 460 F. 3d at 445.  For purposes of a Rule E(4)(f) post-arrest hearing, "[s]uperficial compliance with Rule B, while necessary, is not sufficient in determining whether maritime attachment is appropriate." *Williamson v. Recovery, Ltd. Partnership,* 542 F.3d 43, 52 (2d Cir. 2008).  Rather, "the attaching party must present sufficient evidence to show probable cause for the attachment." *Diesel Specialists v. M/V Mohawk Transp., LLC.,* 2009 WL 1036085, * 4 (E.D. La. April 17, 2009) (Engelhardt, J.); *see also G.O. Am. Shipping*, 2017 WL 6026959 at *6.  Thus, a "district court may certainly vacate the [attachment] if it determines, after hearing from both parties, that the requirements of Rule B have not actually been met." *Williamson*, 542 F.3d at 52.

        2.    <u>Pacific Cannot Meet Its Rule B Burden.</u>

In an attempt to meet its burden under Rule B, Pacific asks this Court to engage in a two-part veil piercing exercise that consists of the following allegations:

- Blue Wall and/or Phoenix are alter egos of Adamastos Shipping, and Pacific therefore has a valid maritime claim against them to recover the 2017 arbitration award; and,

- Blue Wall and/or Phoenix are alter egos of Vigorous Shipping and are thus the owners of the Vessel.

However, Pacific cannot establish either one of these allegations.

Absent extraordinary circumstances, corporate separateness is to be respected. With respect to the issue of corporate identity, "[f]ederal courts sitting in admiralty generally apply federal common law[,]" which allows for "piercing of the corporate veil where a corporation uses its alter ego to perpetrate fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." *Kite Shipping LLC v. San Juan Nav. Corp,* 2012 WL 6720624, *3 (S.D. Cal. Dec. 26, 2012) (not reported) (citing *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997). In the Ninth Circuit, to overcome the presumption of in favor of corporate identities and state a claim for alter ego liability, a plaintiff must adequately allege that (1) there is such unity of interest that the separate personalities [of the entity and the shareholder] no longer exist and (2) that failure to disregard [their separate entities] would result in fraud or injustice. *Johnson v. Serenity Transportation, Inc*., 141 F. Supp. 3d 974, 984 (9th Cir. 2015). Conclusory allegations of alter ego status are inadequate; instead, the "plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Id*.

Piercing the corporate veil is "the rare exception" rather than the rule, and is "usually determined on a case-by-case basis." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S. Ct. 1655, 155 L. Ed. 2d 643 (2003). Allegations of common ownership are insufficient. *Chan v. Soc'y Expeditions*, 123 F.3d at 1294; *MS TAGA BAY v. SA Independent Liner Services Pty Ltd*., 2009 U.S. Dist. LEXIS 64639 at *7 (S.D.N.Y. 2009). "Actual dominion, rather than the opportunity to exercise control, must be shown." *Id*. at *8 (citing *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 69-70 (2d Cir. 1996)).

Since each case must be judged on its own facts, no set formula has been created to decide when an alter ego relationship will be found. However, courts evaluate a number of factors to determine whether the application of an alter ego theory is appropriate, including: (1) the commingling of funds and other assets; (2) the failure to segregate funds of the individual and the corporation; (3) the unauthorized diversion of corporate funds to other than corporate purposes; (4) the treatment by an individual of corporate assets as his own; (5) the failure to seek authority to issue stock or issue stock under existing authorization; the representation by an individual that he is personally liable for corporate debts; (6) the failure to maintain adequate corporate minutes or records; (7) the intermingling of the individual and corporate records; (8) the ownership of all the stock by a single individual or family; (9) the domination or control of the corporation by the stockholders; (10) the use of a single address for the individual and the corporation; the inadequacy of the corporation's capitalization; (11) the use of the corporation as a mere conduit for an individual's business; (12) the concealment of the ownership of the corporation; (13) the disregard of formalities and the failure to maintain arm's-length transactions with the corporation; and, (14) the attempts to segregate liabilities to the corporation. *Johnson v. Serenity Transportation, Inc.*, 141 F. Supp. 3d 974, 984 (N.D. Cal. 2015); *also see Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.*, 622 F. Supp. 2d 46, 54 (S.D.N.Y. 2009).

        i.     <u>Pacific's Evidence Fails to Establish Any Alter Ego Allegations</u>.

Conclusory allegations of dominion and control without any genuine factual support are insufficient to sustain an alter ego theory. *Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.,* 22 F. Supp.2d 46, 54n (S.D.N.Y. 2009). Plaintiff's Verified Complaint is scant on facts and a classic example of conclusory pleading. Attached hereto as Exhibit 1 is a copy of

the Plaintiff's Verified Complete with the plainly conclusory and unsupported allegations stricken.  Stripped of the conclusory allegations, the remaining *facts* alleged in support of Plaintiff's alter ego claim are few, and none suggest more than a business organization that was structured, managed, and financed in manner typical of all shipping companies.  Most importantly, none of the facts alleged support the conclusion that Blue Wall or Phoenix were the alter ego of Adamastos Shipping, that Blue Wall or Phoenix were the alter ego of Vigorous Shipping, or that Vigorous Shipping was the alter ego of Adamastos Shipping.

Specifically, disregarding the Plaintiff's conclusory allegations, the remaining factual allegations to support Plaintiff's alter ego claims are as follows:

- That Adamastos Shipping and the other named defendants all used the same office address, "c/o Phoenix Shipping," in Greece.  ¶¶ 11 & 54.  This fact is not surprising or suggestive of alter ego relationships, as Phoenix Shipping provided technical management to each of the separate corporate owners of all the vessels within the Blue Wall group under the terms of a standard BIMCO SHIPMAN management agreement.

- That Phoenix Shipping abandoned the M/V ADAMASTOS in Brazil in breach of the charter party agreement.  ¶ 43.  Phoenix Shipping provided technical management services to the owner of the M/V ADAMASTOS.  This fact does not suggest any alter ego relationship.

- That the M/V ADAMASTOS was subject to a mortgage signed by George Gourdomichalis.  ¶ 45.  This fact does not suggest any alter ego relationship.

- That the Gourdomichalis brothers established the parent company, Blue Wall, for the purpose of owning and operating a fleet of vessels.  ¶ 46.  Another fact not suggestive of an alter ego relationship.

- That Blue Wall's corporate officers include the Gourdomichalis brothers, as chief executive officer and chief operating officer, and a Mr. Alexandros Hiadas as its chief financial officer.  ¶ 47.  Another fact that does not suggest an alter ego relationship.  Plaintiff's allegation also fails to disclose the Gourdomichalis brothers are only 2 of the 7 members of Blue Wall's board of directors.

- Brothers George and Statis Gourdomichalis acquired the vessels by raising equity to purchase the vessel and spent over $45 million dollars on the M/V BRAZEN; M/V COURAGEOUS; M/V DAUNTLESS and the M/V FEARLESS.  ¶ 51. Contrary to the Plaintiff's misleading allegation, the news article cited as the source of this allegation, Exhibit 7 to the Verified Complaint, actually confirms that Blue Wall, and not the Gourdomichalis brothers, individually, that was raising capital to expand its fleet.  The fact that Blue Wall may have done so is also not suggestive of an alter ego relationship with any of the other defendants.

- That Blue Wall's address for inquiries is "c/o Phoenix Shipping." ¶ 52.  Here again, the fact that Blue Wall indicated its technical manager for inquiries does not suggest an alter ego relationship.

- That according to the Equasis online database, each of the vessels within the Blue Wall fleet is owned by a separate Liberian corporation.  ¶ 53.  This fact is merely supportive of the corporate separateness of the vessels, is consistent with Blue

Wall's public statements that it has a fleet of "wholly owned" vessels, and makes

clear that there was publicly available information from which the Plaintiff could

confirm the identity of the registered owner of the M/V ADAMASTOS.  The fact

of the separate corporate ownership of the vessels within the Blue Wall fleet is not

suggestive of an alter ego relationship.

- That each of the separate Liberian ship owning corporations list "c/o Phoenix

  Shipping" as it's registered address.  ¶ 54.  Again, this fact is neither surprising

  nor suggestive of an alter ego relationship, as Phoenix Shipping was the technical

  manager of each of the vessels.

- That Vigorous Shipping granted a mortgage upon the M/V VIGOROUS, and

  served as a collateral guarantor, upon borrowing conducted by two other vessel

  owning companies within the Blue Wall fleet, i.e. Brazen Shipping & Trading

  S.A. and Dashing Shipping & Trading S.A., and that Blue Wall, as the parent

  corporation, guaranteed the obligations of Brazen and Dashing.  ¶¶ 59 – 64.

  While this fact may be a proper factor for consideration in evaluating a possible

  alter-ego relationship as between Blue Wall and Vigorous Shipping, it is one of

  minimal significance in the analysis.  That shipping enterprises are regularly

  organized such that their vessels are owned by separate, wholly owned,

  corporations is well known and has long been the standard organizational

  structure in the shipping industry.  See, *A Fresh Look At The Treatment Of Vessel*

  *Managers Under COGSA,* Daniel H. Charest, 78 Tulane L. Rev. 885, February

  2004; *see also*, Declaration of George Gourdomichalis, at ¶ 23.  As such, it is also

common for marine lenders to regularly require cross collateralization of debt obligations between companies within an affiliated group of companies. See, *Recent Issues in Financing Vessels*, Francis X. Nolan III, ALI (March 16, 1995), at p. 13; *see also*, Declaration of George Gourdomichalis, at ¶ 23. The fact that a lender could extract a cross collateralization commitment from Vigorous Shipping may have more to do with the lender's relative bargaining power over the affiliated group of companies than the desires or intent of Blue Wave to ignore corporate formalities or the corporate separateness of its holdings. As with any guarantee, it must be supported by consideration, which could be the value of being part of a larger fleet of affiliated vessels with a strong brand. More importantly, this fact alone would be only one factor of minimal significance in the multi-factored analysis of whether Blue Wall so dominated Vigorous Shipping as to justify the imposition of alter ego liability, and insufficient to establish probable cause to believe that the Plaintiff would prevail on its alter ego claim.

ii.    Vigorous Shipping's Evidence Conclusively Defeats the Alter Ego Allegations.

Pacific cannot pierce the corporate veil between Adamastos Shipping and Blue Wall because the unrefuted evidence establishes that the two companies were independently owned. Blue Wall is a holding company that does not own Adamastos Shipping. *See*, Dec. G. Gourdomichalis, ¶¶ 4, 9. Blue Wall's owners are not the same as Adamastos Shipping's owners. *Id*., ¶¶ 11, 12, 24. Blue Wall did not own or operate the vessel ADAMASTOS and Adamastos Shipping was not a subsidiary company of Blue Wall. *Id*.

Page 16 -   Defendant Vigorous Shipping & Trading's Motion to Vacate Maritime Rule B Attachment

Blue Wall maintains all proper corporate formalities.  *Id*., ¶¶ 14, 15, 18, 19, 22.  Adamastos

Shipping is no longer incorporated, and therefore no longer exists.  *Id*., ¶ 12.

      Pacific cannot pierce the corporate veil between Adamastos Shipping and

Phoenix.  Phoenix and Adamastos Shipping had a ship-management agreement that called for

Phoenix to serve as the ADAMASTOS's ISM and technical manager.  *Id.,*¶ 10.  Phoenix never

owned the vessel ADAMASTOS (and has not ever owned any ship).  *Id.,*¶ 5.  Phoenix had no

other connection to Adamastos Shipping.  In the arbitration proceeding between Pacific and

Phoenix, the panel found that Phoenix acted as an agent for Adamastos Shipping, and did not

accept Pacific's argument that Phoenix was the vessel ADAMASTOS's beneficial owner.  *See*,

Ex. E to Dec. S. Muranovic.

      Additionally, as to both Blue Wall and Phoenix, the unrefuted evidence is that

Blue Wall and Phoenix maintain adequate corporate minutes and records, Dec. G.

Gourdomichalis, ¶¶ 18, 22;  there is no intermingling of individual and Blue Wall or Phoenix

company records, *Id*., ¶ 19; Blue Wall or Phoenix are managed by appointed officers and

directors, and not by the shareholding owners of the company, *Id*., ¶ 20; Blue Wall and Phoenix

are adequately capitalized, *Id*., ¶ 21; The companies are current on their contractual obligations,

*Id*., ¶ 21; Blue Wall and Phoenix maintain all corporate formalities, including articles of

incorporation, by-laws, and minutes of directors' meetings, *Id*., ¶ 22; and Blue Wall and Phoenix

maintain separate books, segregate their funds, and do not commingle their assets with each

other or any other entity, *Id*., ¶ 14.

      Pacific cannot pierce the corporate veil between Blue Wall and Vigorous Trading,

or between Phoenix and Vigorous Trading because the unrefuted evidence establishes that

Vigorous Trading was not in existence at the time that the charter agreement between Adamastos Shipping and Pacific was agreed upon.  *See*, Dec. S Gourdomichalis, ¶ 13, *see also*, Exhibit A to Dec. S. Muranovic.  Thus, there exists no evidence that with respect to the underlying transaction, Blue Wall or Phoenix exercised dominion and control over Vigorous Shipping that could have resulted in the latter committing some type of fraud or wrong upon Pacific.  Moreover, Vigorous Shipping's only relationship with Phoenix is per a BIMCO Shipman (ship management) agreement with Phoenix to technically and commercially manage the Vessel.  *Id.*, ¶ 7.  Additionally, the only allegations of fraud asserted by Plaintiff are found in paragraphs 71 through 74 of its Complaint, and none of those paragraphs allege any fraudulent conduct by Vigorous Trading.  See discussion below.  Simply put, there exists no alter-ego basis for Pacific to seize Vigorous Shipping's property, i.e., the Vessel.

The foregoing argument is buttressed by Plaintiff's assertions on page 8 of its Complaint that "[t]he alter ego doctrine applies when either (1) the owner exercised complete control over the corporation with respect to the transaction at issue, or (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the corporate veil."  Citing *OS Shipping Co. v. Global Mar. Trust(s) Private Ltd.*, No. 11-CV-377-BR, 2011 U.*S. Dist. LEXIS 49054, at \*15* (D. Or. 2011)*,* citing *Chan v. Soc'y Expeditions, Inc*., 123 F.3d 1287, 12954 (9th Cir. 1997).

Here, Plaintiff admits that the "underlying transaction" was the entry into the charter party between Pacific and Adamastos Shipping for the vessel ADAMASTOS.  Vigorous Shipping did not exist at the time of that transaction, and thus could not have engaged in any fraud with respect thereto.  The words "such control" mean "control over the corporation with

respect to the transaction at issue", but again Vigorous Shipping did not exist at that time. Moreover, Plaintiff has not even alleged any facts demonstrating the commission of any fraud by Vigorous Trading.  The essence of the allegations by Plaintiff of fraud are set forth in Complaint paragraphs 71-74, none of which make any allegations of any conduct by Vigorous Shipping.

> ### C.      Res Judicata Bars Pacific's Claim.

Under Ninth Circuit precedent, the "elements necessary to establish res judicata are:  "(1) an identity of claims; (2) a final judgment on the merits, (3) and privity between the parties."  *Headwaters, Inv. v. U.S. Forest Service*, 399 F.3d 1047, 1052 (2005).

In 2015, Pacific arrested VIGOROUS in South Africa and filed suit in the same proceeding against Vigorous Shipping.  The South African Court vacated the arrest on grounds that there was no association between the vessels VIGOROUS and ADAMASTOS.  The court said:  "[t]he essence of proof of association is to establish that the same person or persons have the power to determine the direction and fate of the two ships in question."  *See* Exhibit 12 to Plaintiff's Complaint, Ex. 12, page 11, ¶ 20.  The court found that "[o]n the papers before me it seems that the attempts to establish a link between the mv Adamastos and the mv Vigorous via Blue Wall boils down to being mere suggestion and conjecture." South African counsel's declaration provides evidence of foreign law that the judgment vacating the arrest in South Africa stands as a final judgment on the merits of the arrest.  *See*, Declaration of Patrick Michael Holloway, filed herewith, and Reasons for Judgment attached thereto, at ¶ 22.  Having arrested VIGOROUS once and sued Vigorous Shipping for the purpose of claiming that they were controlled by the same company, Blue Wall, and losing on that issue, Pacific is barred from relitigating its claims against VIGOROUS and Vigorous Shipping on that same issue.

Similarly, on April 4, 2017, an English arbitration panel issued a written opinion addressing Pacific's claims against Phoenix ruling in the latter's favor, which serves to bar Plaintiff's attempt to pierce the corporate veil through Phoenix. In the arbitrators' decision, the panel noted that

> the present arbitration was commenced by PGSC against Phoenix on the basis that, although Phoenix purported to be only the managers of the vessel at the relevant time, they were the only company identified as the contractual counterparty in the fixture recap message. PGSC maintained that in reality Phoenix was not a third party manager dealing with Adamastos at arm's length but was, to all intents and purposes, the beneficial owner of the vessel.

*See* Ex. E to Dec. S. Muranovic, at p. 3, ¶ 5. The panel held that

> If, as we believe to be the case, on a true construction of the Charterparty, Phoenix was never a party to the Charterparty but was simply named for informational purposes as the manager of the Vessel on behalf of the registered owners, then it seemed to us to follow that it could not have contracted in its own right. Its' [sic] only involvement was as agent for the registered owners, Adamastos.

*Id.*, p. 16, ¶ 50. The panel ruled for Phoenix, which dispensed with Pacific's argument that Phoenix was the beneficial owner of the vessel ADAMASTOS. Not having been appealed, the 2017 panel ruling now stands as a final judgment on the merits as to whether Phoenix was a beneficial owner of the vessel ADAMASTOS.

Plaintiff seeks to relitigate issues that have been finally decided by a South African court and an English arbitration panel. Just by adding additional defendants and documents, Plaintiff cannot relitigate those issues. Plaintiff is foreclosed from contesting that Blue Wall controlled both the vessels VIGOROUS and the now-scrapped ADAMASTOS, and from contesting that Phoenix was the beneficial owner of ADAMASTOS.

With a judicial finding that Blue Wall did not control both vessels, and an arbitration panel decision that Phoenix was not the beneficial owner of ADAMASTOS, Plaintiff cannot succeed on its alter ego theory against Vigorous Shipping.  This is so because Plaintiff must actually pierce two sets of corporate veils.  It must establish either that Adamastos Shipping (owner of the vessel ADAMASTOS) was one and the same as Blue Wall, and that Blue Wall is one and the same as Vigorous Shipping.  Or, it must establish that Adamastos Shipping was one and the same as Phoenix Shipping, and that Phoenix Shipping was one and the same as Vigorous Shipping.  Plaintiff can do neither.  If Blue Wall did not control the only asset of Adamastos Shipping, and Phoenix was not the beneficial owner of that same asset, then those two companies cannot be one and the same as Adamastos Shipping, which was a special purpose vehicle (SPV) single-ship owning company.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

II.    **CONCLUSION**

For the foregoing reasons, Vigorous Shipping respectfully requests that this Honorable Court vacate the attachment of Vigorous Shipping's vessel and dismiss Pacific's Verified Complaint with prejudice.  Vigorous Shipping, in turn, seeks all other equitable relief, including the right to obtain damages from Pacific for its wrongful attachment of the Vessel.

DATED:  December 10, 2018.

MILLER NASH GRAHAM & DUNN LLP

s/ Sanja Muranovic
M. Christie Helmer, OSB No. 743400
chris.helmer@millernash.com
Jess G. Webster, OSB No. 155330
jess.webster@millernash.com
Sanja Muranovic, OSB No. 171774
sanja.muranovic@millernash.com
Telephone:  503.224.5858
Facsimile:  503.224.0155

BLANK ROME LLP
Keith B. Letourneau (*Pro Hac Vice* pending)
kletourneau@blankrome.com
Jeremy A. Herschaft (*Pro Hac Vice* pending)
jherschaft@blankrome.com
Telephone:  713.228.6601
Facsimile:  713.228.6605

Attorneys for Defendant
Vigorous Shipping & Trading